UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JACOB M., | ) |
| | ) |
|         Plaintiff | ) |
| | ) |
| v. | )    No. 1:21-cv-00279-LEW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|         Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) impermissibly interpreted raw medical evidence in determining his residual functional capacity (RFC). *See* Statement of Errors (ECF No. 19) at 3-12. I agree and recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

**I. Background**

Following a prior remand by this Court, the ALJ found, in relevant part, that the Plaintiff (1) had the severe impairments of chronic fatigue and arrhythmia, *see* Record at 397, (2) retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that he could frequently stoop, kneel, crouch, and crawl, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, and was limited to work involving simple, routine, repetitive tasks and no detailed instructions, *see id*. at 399, (3) could perform jobs existing in significant numbers in

1

the national economy, *see id.* at 402-03, and (4) therefore was not disabled, *see id.* at 404. The Appeals Council declined to assume jurisdiction of the case following remand, *id.* at 384-87, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1484(a), (b)(2); *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

Although an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess [RFC] based on a bare medical record." *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). Applying this principle, this Court held

remand warranted when an ALJ, as a layperson, formulated a mental RFC after rejecting both agency nonexamining consultants' findings that a claimant had no severe mental impairment and a treating source's assessment of greater mental limitations. *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *3-5 (D. Me. Mar. 15, 2017) (rec. dec.), *aff'd*, 2017 WL 1194182 (D. Me. Mar. 30, 2017). The Court reasoned that rather than "assessing a mental RFC that gave the plaintiff the benefit of the doubt or otherwise was more favorable than the remaining evidence would support," the ALJ had "assessed an RFC unsupported by substantial evidence." *Id.* at *5; *compare Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *3-4 (D. Me. Mar. 28, 2019) (affirming when an ALJ rejected expert opinions not because of later-submitted evidence but because she chose to credit some of the claimant's subjective allegations) *with Linda C. T. v. Saul*, No. 2:20-cv-00060-NT, 2021 WL 371691, at *3-4 (D. Me. Feb. 3, 2021) (rec. dec.), *aff'd*, 2021 WL 728111 (D. Me. Feb. 24, 2021) (remanding when an ALJ discounted expert opinions on the basis of later-submitted evidence and partially rejected opinions of treating sources, thereby leaving her RFC findings unsupported "by any medical opinion evidence and, hence, not more favorable to the [claimant] than the record would otherwise support").

The Plaintiff contends that the ALJ impermissibly construed raw medical evidence in the form of a "tilt table test" report in arriving at his RFC determination, *see* Statement of Errors at 4-12; the Commissioner argues that the ALJ made "reasonable inferences" based on the testimony of a medical expert, cardiologist

James W. Todd, M.D., and the Plaintiff's own testimony—"none of which exceeded the bounds of his expertise as a layperson." Defendant's Opposition (ECF No. 23) at 5. The Plaintiff has the better argument.

The ALJ convened a hearing in late August 2019 during which Dr. Todd was called to testify. *See* Record at 411, 416. The Plaintiff testified that he was scheduled to undergo a cardiac workup, in the form of a tilt table test, in early September 2019. *Id.* at 418-19. Dr. Todd indicated that he needed the test results before testifying, explaining that the only complete cardiology workups the Plaintiff had undergone, in 2016, were normal. *Id.* at 419. The ALJ rescheduled the hearing for January 2020, at which time the Plaintiff's counsel informed him that he had not yet received the report of the tilt table test, which had been performed in early December 2019. *See id.* at 430, 432. Dr. Todd advised the ALJ that he could attend another hearing but would not be able to answer post-hearing interrogatories. *See id.* at 433. The ALJ went forward with the hearing, following which he left the record open for three weeks to receive the tilt table test results, *see id.* at 432-33, then issued his decision without further expert consultation, *see id.* at 394.

During the Plaintiff's January 2020 hearing, Dr. Todd testified that although the Plaintiff had been worked up for "extreme fatigue and sweaty palms," and one doctor had described him as having a heart problem that would preclude employment, there were "no objective findings at all to support a disease process" in him. *Id.* at 435-36. Dr. Todd deemed the Plaintiff capable of performing "medium duty" work, lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, lifting

4

and carrying 25 pounds up one or two flights of stairs, and standing for up to six hours in an eight-hour workday. *Id*. at 438.

The tilt table test report submitted post-hearing described "Type 2A Cardioinhibition without asystole; Heart rate falls to a ventricular rate of less than 52 beats/min for more than 10 seconds, without asystole more than 3 seconds" and without a significant fall in blood pressure but with "pallor" and "unresponsiveness." *Id*. at 809. The Plaintiff was instructed to follow up with a physician "for possible permanent pacemaker." *Id*. Kristopher O'Connell, D.O., the Plaintiff's primary-care physician, noted on December 9, 2019, that the Plaintiff "will continue to follow up with Cardiology due to abnormal tilt-table test." *Id*. at 835.

The ALJ found that the Plaintiff had two severe impairments, chronic fatigue and arrhythmia, but retained the capacity to perform light work with postural and mental limitations. *See id*. at 397, 399. In so doing, he gave (1) "partial weight" to Dr. Todd's RFC opinion, (2) "limited weight" to Dr. O'Connell's opinions that the Plaintiff could lift/carry at a medium capacity but could not stand/walk more than three hours in an eight-hour workday, would need to lie down one time per work shift, alternate from sitting to standing/walking at will, and take unscheduled breaks of fifteen or more minutes, and would likely be absent from work more than four days a month on average, (3) "little weight" to the opinion of examining consultant Crystal MacClintock, P.A., that the Plaintiff could lift/carry at a light capacity, stand for no more than thirty minutes at a time or two hours in an eight-hour day, walk for no more than fifteen minutes at a time or one hour in an eight-hour day, and had

5

postural limitations as well as limitations in reaching, pushing, and pulling with his upper extremities, and (4) "little weight" to the assessments of two agency nonexamining consultants that the Plaintiff had no medically determinable impairments. *Id.* at 401-02.

Thus, as in *Lisa Staples*, the ALJ rejected RFC opinions that were both more and less favorable to the Plaintiff than the RFC he ultimately assessed. While, as the Commissioner emphasizes, *see* Defendant's Opposition at 7, the ALJ indicated that he assessed an RFC more favorable than that of Dr. Todd because he credited the Plaintiff's subjective allegations at least in part, he also made reasonably clear that he did so in view of the tilt table test results.

After summarizing both the results of the tilt table test and the Plaintiff's testimony concerning them, the ALJ stated:

> The absence of significant medical signs or laboratory findings to explain the allegations of chronic fatigue and cardiac episodes is not consistent with allegations of disabling symptoms and limitations from those impairments. Moreover, giving maximum deference to the allegations, *the objective evidence* is not consistent with limitations beyond a slightly reduced range of light, at best.

Record at 400 (emphasis added).

The ALJ explained that he deemed Dr. Todd's "knowledge and understanding of medical signs and laboratory results on cardiac function and the impact on physical capacity . . . persuasive and his testimony . . . consistent with the evidence found in the record." *Id.* at 401. However, in view of "the workup for the alleged symptoms"— a seeming reference to the tilt table test, the only objective evidence unseen by Dr. Todd—he gave "greater deference to the allegations of the [Plaintiff] in terms of

6

chronic fatigue and intermittent cardiac episodes, in reducing [him] to a slightly reduced range of light residual functional capacity." *Id*.

Likewise, in according "little weight" to the findings of two agency nonexamining consultants that the Plaintiff had no medically determinable physical impairments (and thus no functional limitations), the ALJ explained that although the record lacked "significant objective support" for the allegations, the "workup for the alleged symptoms"—again, a seeming reference to the tilt table test—as well as the Todd, MacClintock, and O'Connell opinions "reasonably support[ed] . . . more than minimal functional limitations from chronic fatigue and intermittent cardiac episodes notwithstanding [the] absence of well-defined organic cause for the conditions." *Id*. at 402.

As in *Lisa Staples*, the ALJ rejected expert opinions that were both more and less favorable to the Plaintiff and assessed an RFC unsupported by any expert opinion of record. While, as in *Kristina D. B.*, he stated that, in deviating from those opinions, he had at least partly credited the Plaintiff's subjective allegations, he made clear that he did so because of the report of a "workup" that was unseen by any medical expert. In so doing, he impermissibly construed raw medical evidence to arrive at his RFC determination, rendering it unsupported by substantial evidence and undermining his reliance on the testimony of a vocational expert to carry the Commissioner's Step 5 burden of demonstrating that the Plaintiff was capable of performing jobs existing in significant numbers in the national economy. *See, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)

7

(responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).[1]

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: November 10, 2022

/s/Karen Frink Wolf
United States Magistrate Judge

---

[1] I need not and do not address the Plaintiff's additional argument that the ALJ erred in failing to find a medically determinable impairment of chronic fatigue syndrome.  *See* Statement of Errors at 12-13.